UNITED STATES DISTRICT COURT
DISTRICT OF MAINE


| | | |
|---|---|---|
| DEBRA M. HARTHORNE, | ) | |
| | ) | |
|      *Plaintiff* | ) | |
| | ) | |
| v. | ) | Civil No. 08-120-B-W |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
|      *Defendant* | ) | |

### REPORT AND RECOMMENDED DECISION[1]

In this Social Security Disability ("SSD") appeal, the plaintiff contends that the administrative law judge treated the opinion of her treating physician incorrectly, wrongly relied on the Grid, was required to find that she met the criteria of Listing 12.05, was required to consult a medical expert at the hearing, and was required to develop the evidentiary record further. I recommend that the court remand the case for further proceedings.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520, *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff suffered from chronic obstructive pulmonary disease, possible rheumatoid arthritis, colitis/irritable bowel syndrome, a thyroid disorder, a post-traumatic stress disorder, depression, anxiety, and a history of alcohol

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on October 17, 2008, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

abuse, impairments that were severe but which, considered alone or in combination, did not meet or medically equal the criteria of any impairment listed in Appendix 1 to Subpart P, 20 C.F.R. 40 (the "Listings"), Findings 3-4, Record at 19; that, beginning on February 16, 2005, the plaintiff's chronic obstructive pulmonary disease did meet the requirements of Section 3.02 of the Listings, Finding 4, *id*.; that the plaintiff's subjective complaints were not sufficiently supported by the medical evidence prior to February 15, 2005, and were not credible to the extent of establishing an inability to perform unskilled, light work prior to that date, Finding 5, *id*. at 20; that since December 31, 2002, the plaintiff had not had the residual functional capacity to perform any of her past relevant work, Finding 6, *id*.; that from December 31, 2002, through February 15, 2005, the plaintiff has the residual functional capacity to perform sedentary, and possibly light, unskilled work not requiring frequent contact with the public, Finding 7, *id*.; that, given her age (38, a younger individual), high school education, work experience, and residual functional capacity, using Rules 201.24 and 201.25 of Appendix 2 to Subpart P, 20 C.F.R. Part 404, as a framework for decision-making, there were a significant number of jobs in the national economy that she was able to perform during the relevant period, Findings 8-9, *id*.; and that the plaintiff was not under a disability, as that term is defined in the Social Security Act, from December 31, 2002, through February 15, 2005, Finding 10, *id*. The Appeals Council declined to review the decision, *id*. at 6-8, making it the final decision of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 647 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support

the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his or her past relevant work.  20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.  The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual functional capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff's appeal also implicates Step 3 of the sequential process, at which stage a claimant bears the burden of proving that his or her impairment or combination of impairments meets or equals the Listings.  20 C.F.R. § 404.1520(d); *Dudley v. Secretary of Health & Human Servs.,* 816 F.2d 792, 793 (1st Cir.1987).  To meet a listed impairment, the claimant's medical findings (*i.e.,* symptoms, signs, and laboratory findings) must match those described in the listing for that impairment.  20 C.F.R. §§ 404.1525(d), 404.1528.  To equal a listing, the claimant's medical findings must be "at least equal in severity and duration to the listed findings."  20 C.F.R. § 404.1526(a).  Determinations of equivalence must be based on medical evidence only and must be supported by medically acceptable clinical and laboratory diagnostic techniques.  20 C.F.R. § 404.1526(b).

## Discussion

### A.  Dr. Austin's Opinions

The plaintiff first contends that the administrative law judge "plainly ignored" 20 C.F.R. § 404.1527(d)(2) and Social Security Ruling 96-2p in rejecting the functional capacity opinions

of David Austin, M.D., her treating physician.  Plaintiff's Itemized Statement of Specific Errors ("Itemized Statement") (Docket No. 7) at 2.  The cited regulation provides:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.  If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.  When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion.  We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. § 404.1527(d)(2).

The plaintiff relies on portions of three reports by Dr. Austin, dated August 12, 2003, September 19, 2003, and November 12, 2003.  Itemized Statement at 2.[2]  In August, Dr. Austin opined that the plaintiff would "not be able to do repetitive work with her hands or any heavy lifting or carrying or handling objects."  Record at 245.  In September, he reiterated this statement and added, "I believe she is clearly unable to work at this time, and probably will be so for the foreseeable future.  Her chance of eventually obtaining gainful employment would be greatly enhanced if she could obtain appropriate medical care."  *Id*. at 243.  In November, he completed a form for the Maine Department of Labor on which he stated that the plaintiff was able to work only 20 hours per week, with no lifting over 10 pounds and no repetitive work with her wrists.  *Id*. at 133.  The plaintiff assails the administrative law judge's failure to mention

---

[2] The plaintiff refers to "an October 1, 2003 onset date."  Itemized Statement at 2.  The administrative law judge, the plaintiff in her initial application, and her lawyer at the hearing all used December 31, 2002 as the date of onset.  Record at 14, 73, 134, 556.

these statements in Dr. Austin's reports and to give good reasons for rejecting them. Itemized Statement at 2-4.

Social Security Ruling 96-2p includes a similar requirement when the decision is less than fully favorable to the claimant:

> the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

Social Security Ruling 96-2p ("SSR 96-2p"), reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2008), at 115.

Since the administrative law judge's opinion limited the plaintiff to work at the sedentary exertional level, Record at 20, his failure to discuss Dr. Austin's 10-pound lifting restriction is at most a harmless error, as that exertional level is defined to involve lifting no more than 10 pounds. 20 C.F.R. § 404.1567(a). Of the two remaining specific findings by Dr. Austin on which the plaintiff relies, Itemized Statement at 3, a capacity for working only 20 hours per week and with no repetitive hand work, the latter was addressed as follows by the administrative law judge:

> On July 17, 2003, Dr. Austin saw the claimant in follow-up after an emergency room visit for hot and swollen joints (*see* Exhibit 13F, pages 24-25). By the time of his examination, a week after the ER visit and after a week of Prednisone therapy, the claimant's joints were normal. . . . On August 12, 2003, Dr. Austin wrote a letter to the State Agency stating that the claimant's severe symptoms had been intermittent, although her arthritic symptoms had caused her to lose certain jobs due to recurrent flare-ups. He indicated the claimant's present ability to work was "limited," as she would not be able to do repetitive work with her hands, or any heavy lifting or carrying or handling objects.
> \* \* \*
> Sidney Block, M.D., a rheumatologist, reported mild findings on July 14, 200[4]. The peripheral joints were all within normal limits. He noted on

> August 4, 2004 that all laboratory studies were normal, and a bone scan[3] (*see* Exhibit 12F, pages 17-21) was normal (Exhibit 9F). Examinations by Ann Schaer, PA-C, in September and December 2004 showed no redness or swelling of the joints, despite complaints of stiffness (Exhibit 12F, pages 5 and 3).
>
> \* \* \*
>
> She had one documented episode of joint swelling . . . that cleared quickly, apparently in response to Prednisone. Laboratory reports and a bone scan have no shown signs of an inflammatory disease. . . . Physical examination of the joints has not shown swelling, other than at an emergency room visit in July 2003.
>
> \* \* \*
>
> For example, Dr. Austin's notes showed that, while some of her symptoms became intermittently severe, they responded quickly to medical treatment. . . .   She was not under ongoing treatment for inflammatory arthritis . . . .

Record at 17-19. While the administrative law judge did not specifically say so, he necessarily concluded that Dr. Austin's restrictions on repetitive movements with the hands or wrists was not supported by the other medical evidence he cited.

The August 2003 report from Dr. Austin cited by the plaintiff does not cite any specific basis for its conclusion that the plaintiff "will not be able to do repetitive work with her hands." *Id*. at 245. He does say that the plaintiff "has what appears to be a rheumatoid arthritis-like pattern of joint swelling and inflammation, which has come and gone several times," and acknowledges that blood testing for rheumatoid arthritis has been negative. *Id*. He opines that "[i]t is possible that she has a combination of arthritis and colitis related to Crohn's disease, though again a definitive diagnosis has not yet been made." *Id*.  Dr. Block's report, eleven months later, appears to definitively rule out rheumatoid arthritis, as discussed above. For all that appears in Dr. Austin's August 2003 letter, his assertions regarding a relationship between Crohn's disease and the plaintiff's symptoms or a "seronegative form of" rheumatoid arthritis

---

[3] The bone scan was ordered to "exclude inflammatory arthritis." Record at 309. The bone scan was reported as normal, and Dr. Block concluded that he could not confirm "any significant inflammatory or degenerative rheumatologic condition contributing to her musculoskeletal symptoms[.]" *Id*.

6

were based on nothing more than what the plaintiff had told him. The single-page report dated September 19, 2003, on which the plaintiff also relies, adds nothing to the August 2003 report beyond a statement that "[i]t is uncertain how long her impairment will continue" (although it is not clear whether the reference is to a physical or a mental impairment, or both) and that her chance of obtaining employment would be greatly enhanced if she could obtain appropriate medical care. *Id.* at 243.

The final report on which the plaintiff relies is the one-page Maine Department of Labor Medical Information form completed by Dr. Austin on November 12, 2003, on which he diagnoses arthritis, among other medical impairments, and asserts that the plaintiff should undertake "no repetitive work with wrists." *Id.* at 133. Again, this report cites no medical test reports or other findings which the applicable Social Security regulations require in order for an administrative law judge to find a severe impairment. *See, e.g.,* 20 C.F.R. §§ 404.1527(d)(3), 404.1529. The medical evidence that the administrative law judge cites that is inconsistent with a limitation on repetitive work with the hands or wrists is, under the circumstances, sufficient to allow him to reject Dr. Austin's conclusion on this issue. Dr. Austin offers nothing beyond a diagnosis of arthritis to explain the plaintiff's reported symptoms in her hands, and Dr. Block's testing and examination is not compatible with that diagnosis. In addition, later residual functional capacity reviews conducted by state-agency physicians both rejected Dr. Austin's conclusion that the plaintiff could not undertake any repetitive activity with her hands. Record at 291, 441. Any error committed by the administrative law judge in failing to identify that evidence as specifically refuting Dr. Austin's diagnosis is accordingly harmless.

With respect to Dr. Austin's conclusion that the plaintiff was able to work only 20 hours per week as of November 12, 2003,[4] which is not mentioned by the administrative law judge, the question is a closer one.  The administrative law judge obviously did not adopt this limitation, as he found that the plaintiff was able to perform jobs that existed in significant numbers in the national economy, *id*. at 19, a finding that presupposes the ability to work a 40-hour week, Social Security Ruling 96-8p, reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2008), at 144.  Yet, even in the absence of any detailed explanation from Dr. Austin for this conclusion, I am constrained to conclude that the administrative law judge's failure to discuss it is a reversible error under 20 C.F.R. § 404.1527(D)(2) and SSR 96-2p.  I cannot conclude from the administrative law judge's discussion of the medical evidence that he ever so much as considered the possibility that the plaintiff was physically incapable of working a 40-hour week at the relevant time.  Given the presence of such a conclusion in the record, from the plaintiff's treating physician, the administrative law judge could not ignore it, even if it appears that the medical evidence of record would not support the conclusion.[5]

At oral argument, counsel for the commissioner asserted that the form on which Dr. Austin recorded the 20-hours-per-week limitation was "considered by the [state agency] reviewers," none of whom found such a limitation.  None of the state-agency reviewers, however, even mentioned this treating-source limitation.  Record at 214-21, 285-92, 434-41, 536-43.  The first of the state-agency reports was filed before Dr. Austin completed the form,

---

[4] Less than two months earlier, on September 19, 2003, Dr. Austin had opined that the plaintiff was "clearly unable to work at this time."  Record at 243.  There are no entries in his medical records in the interim that appear to explain this difference.  Indeed, the records of her two appointments with Dr. Austin during that period both indicate that she was physically well and mentally improved.  *Id*. at 242, 244.

[5] At oral argument, counsel for the commissioner asserted that the lack of detailed analysis accompanying the form completed by Dr. Austin means that his opinion cannot have controlling weight.  I do not mean to suggest that Dr. Austin's opinion on the number of hours per week that the plaintiff could work at the relevant time should have controlling weight, nor what degree of weight it should have.  I merely recommend that the court hold that the administrative law judge may not ignore the opinion.

*compare id.* at 133 *with id.* at 221, so that reviewer could not have considered Dr. Austin's limitation. In the absence of any mention of that limitation by any of the other three state-agency reviewers, I cannot conclude that they must have rejected the limitation and that the administrative law judge's failure to mention it is rendered harmless by the fact that the state-agency physician reviewers might have seen it. I am not able to conclude that the administrative law judge's error was harmless under the circumstances of this case. The plaintiff is entitled to remand on this basis. For the benefit of the parties on remand, I will briefly address the other issues raised by the plaintiff.

### B. Use of the Grid

The plaintiff next argues that the significant non-exertional impairments that the administrative law judge found to exist at the relevant time "precluded his exclusive reliance on" the Grid. Itemized Statement at 4. Of course, the administrative law judge stated that he was using the Grid "as a framework for decision-making," Record at 20, an approach that is distinct from exclusive reliance. When the Grid is used as a framework, there is an implication that the impact of the noted nonexertional impairments is more than slight, because the Grid is to be used directly only when such an impact is not significant. *See Rose v. Shalala*, 34 F.3d 13, 19 (1st Cir. 1994). When the Grid is used as a framework, the administrative law judge must either consult a vocational expert, *Burgos Lopez v. Secretary of Health & Human Servs.*, 747 F.2d 37, 42 (1st Cir. 1984), or demonstrate ample support in the record for the proposition that the significant nonexertional impairment at issue nonetheless only marginally reduces the occupational base, *Ortiz v. Secretary of Health & Human Servs.*, 890 F.2d 520, 524-26 (1st Cir. 1989). Here, no vocational expert testified at the plaintiff's hearing, Record at 554-55, so the administrative law judge must have found that the plaintiff's nonexertional impairments – post-

traumatic stress disorder, depression and anxiety, *id.* at 19 – had only a marginal effect on the sedentary occupational base, presented by the administrative law judge as limiting the plaintiff to work "not requiring frequent to constant contact with the public." *Id.* at 20. The question raised by the plaintiff's appeal in this case, then, is whether such a limitation has only a marginal effect on the sedentary occupational base.[6]

Were the limitation in question applicable only to an inability to do work that required constant interaction with others, I would readily find that the limitation would have very little effect on the occupational base. *MacFarlane v. Astrue*, 2008 WL 660225 (D. Me. Mar. 5, 2008), at *3 (and authority cited therein). But the finding here requires the plaintiff to avoid frequent contact with the public. Record at 20.

The plaintiff, however, does not choose this basis for her attack on the administrative law judge's professed use of the Grid as a framework. Rather, she focuses, Itemized Statement at 4-7, on a portion of the administrative law judge's discussion of the evidence, which precedes his findings, in which he found that "prior to February 16, 2005, the [plaintiff] had a mild restriction of activities of daily living, moderate difficulties maintaining social functioning . . . ." Record at 18. The plaintiff further asserts that the administrative law judge "referenced" the Mental Residual Functional Capacity Assessment completed by Lewis Lester, Ph.D., in August 2005, Record at 442-59, and that the administrative law judge should have "focus[ed] on" Dr. Lester's limitation of the plaintiff to "simple" work. She then argues that a limitation to simple work has more than a marginal effect on the sedentary occupational base, making the administrative law judge's use of the Grid improper. Itemized Statement at 4-7.

---

[6] I will not consider the administrative law judge's finding that the plaintiff had the residual functional capacity to perform work at the "possibly light" exertional level. Record at 20. The Social Security system, and the case law dealing with Social Security claims, are not designed to deal with conditional or hypothetical findings by the commissioner.

The problem with this argument is that, while the administrative law judge does say in the narrative section of his opinion that Dr. Lester's completed form "is a reasonable evaluation of the severity of the claimant's mental impairments beginning with the alleged onset date," Record at 18, he did not adopt any of the specific limitations discussed by Dr. Lester. *Compare* Record at 458 (Dr. Lester's functional capacity assessment) *with id.* at 20 (adopting only "work not requiring frequent to constant contact with the public" as a mental limitation). The plaintiff's analysis is based on a construct that is not supported by the record. It is certainly not a necessarily-implied component of a finding limiting a claimant's contact with the public that the claimant is also limited to work involving simple instructions and tasks. On the showing made, the plaintiff takes nothing by this argument.

### C. Medical Expert and Development of the Record

The plaintiff engages in an extensive discussion of her medical history followed by an argument that the administrative law judge was required to "further[] his inquiry" after determining that she was disabled as of February 16, 2005 due to chronic obstructive pulmonary disease to "search[] for the date" when that impairment "was sufficiently severe to prevent [her] from engaging in" substantial gainful activity. Itemized Statement at 7-10. But, of course, that is precisely what the administrative law judge did determine: that impairment was sufficiently severe to prevent her from working as of February 16, 2005.

The plaintiff contends that Social Security Ruling 83-20 required the administrative law judge in this case to obtain additional evidence "including lay evidence, entertain[] reasonable inferences based on the available evidence, and us[e] the services of a medical expert" in order to determine nevertheless whether the chronic obstructive pulmonary disease actually was disabling before February 16, 2005, to "re-examin[e] Dr. Austin's three treating source opinions," "to

11

obtain expert medical advice on the complex of conditions and symptoms cited in the medical records regarding the Plaintiff's thyroid, abdominal and musculoskeletal conditions and their inter-relationships, if any" and "to integrate the mental health findings into the overall assessment of the Plaintiff's conditions, particularly her reports of continuing anxiety attacks." Itemized Statement at 10-11.

The medical evidence recited in the plaintiff's survey is largely based on her own reports to her medical care providers, *id.* at 7-10, which are not an acceptable basis for a finding of disability. 20 C.F.R. § 404.1529(a). The plaintiff's summary also excludes the medical providers' numerous reports of improvements over the period between the alleged onset date and February 16, 2005, which are noted by the administrative law judge. Record at 16-19. Furthermore, the plaintiff's argument is based on the assumption that all of her alleged physical impairments were the "slowly progressive impairments" that are the subject of Social Security Ruling 83-20. Itemized Statement at 10. That is an assumption that simply cannot be made based only on the titles of the impairments themselves. In the absence of any evidence that each of these impairments is by nature slowly progressive, the Ruling does not apply. The only other authority cited by the plaintiff for her position on this issue is case law that deals with instances in which the medical evidence concerning the date of onset is ambiguous and requires the making of medical inferences. *Kelly v. Astrue*, 2007 WL 2021923 (D. Me. July 11, 2007), at *3-*5; *Katt v. Astrue*, 2007 WL 815418 (9th Cir. Mar. 14, 2007), at **1; *Lawrence v. Massanari*, 2001 WL 915250 (D. Me. Aug. 15, 2001), at *3.

The plaintiff has not established a basis for remand on this issue.

**D.  Section 12.05(C) of the Listings**

Finally, the plaintiff contends that the administrative law judge erred in finding that she did not meet the criteria of section 12.05(C) of the Listings, at Step 3 of the sequential evaluation process, apparently arguing that she met these criteria as of the alleged date of onset of disability. She relies on the results of an IQ test administered by Willard E. Millis, Jr., Ph.D, reported on September 26, 2003, to the state disability determination service.[7]  Itemized Statement at 11-13. Dr. Millis was a consulting medical source who saw the plaintiff once.  Record at 210.  The administrative law judge recited Dr. Millis's IQ findings and his opinion that the scores represented borderline intellectual functioning, rather than mental retardation.  *Id*. at 18.  He also noted that the state-agency psychologist reviewers agreed with that conclusion.  *Id*. at 18, 226, 302, 305, 446.  The administrative law judge concluded that

> there is no clear evidence of deficits in adaptive functioning initially manifested during the claimant's developmental period (prior to age 22). She was married at age 20.  She was able to complete her high school diploma and engage in substantial gainful activity, including semiskilled work.  There is no basis to conclude that the claimant had mental retardation as defined in Section 12.05C or D of the Listings[.]

*Id*. at 18.

The plaintiff nonetheless asserts that "the highly relevant fact that the Plaintiff had been in special education classes up to, and perhaps during, high school" supports the proposition that her "cognitive issues well pre-dated age 22" and was omitted from the administrative law judge's discussion.  Itemized Statement at 13.  The plaintiff reported attending special education classes

---

[7] At oral argument, counsel for the commissioner asserted that this IQ test was "part of a prior application in which [the state disability agency] found that Listing 12.05(C) had not been met," that this finding was not appealed, and that the finding was therefore administratively final, presumably binding this court in this proceeding.  Counsel provided no documentation for this claim and did not cite any page of the administrative record.  I cannot rule on the basis of this verbal representation alone without record support.  If the commissioner meant to rely on this procedural argument, it was incumbent upon him to provide the court with the necessary supporting documentation.

only in math and reading. Record at 89, 562. The Listing on which she relies provides as follows, in relevant part:

> 12.05 *Mental retardation*: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> \* \* \*
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

Listings § 12.05.

The plaintiff correctly notes, Itemized Statement at 12, that an IQ is presumed to remain stable over time in the absence of evidence to the contrary, making testing done in 2003 sufficient under this Listing. *Sturtevant v. Barnhart*, 2005 WL 1353727 (D. Me. June 7, 2005), at \*4 (citing cases). In *Ouellette v. Apfel*, 2000 WL 1771122 (D. Me. Dec. 4, 2000) (*aff'd* 12/29/2000, Hornby, J.), this court held that satisfaction of the numerical IQ standard satisfies the Listing's reference to "deficits in adaptive behavior" as well. *Id*. at \*3. Thus, evidence such as school records or other activities of the plaintiff need not be considered further. The only remaining question under the Listing is whether a physical or other mental impairment imposed an additional and significant work-related limitation at the relevant time.

The plaintiff suggests that her joint pain or her combined mental health conditions as of the alleged date of onset constitute the "other . . . impairment imposing an additional and significant work-related limitation" required by the Listing. Itemized Statement at 13. At oral argument, counsel for the commissioner conceded that the plaintiff's physical impairments met

this requirement of the Listing. Nothing further is required. The plaintiff is entitled to remand on this basis as well.

## Conclusion

Foe the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case remanded for further proceedings consistent herewith.

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 16th day of November, 2008.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge